1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   DAVID L. CAIN,                          No. CIV S-08-082-CMK

12              Plaintiff,

13        vs.                              <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16   _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pursuant to the consent of the parties, this case is before the undersigned for final decision on

20   plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary

21   judgment (Doc. 16).

22                              **I.  PROCEDURAL HISTORY**

23              Plaintiff applied for social security benefits on May 18, 2004.  In the application,

24   plaintiff claims that his disability began on January 1, 1985.  Plaintiff claims that his disability is

25   caused by a combination of Post Traumatic Stress Disorder (PTSD), childhood abuse, L4-5

26   broken spine, and gunshot wound to left leg.  Plaintiff's claim was initially denied.  Following

denial of reconsideration, plaintiff requested an administrative hearing, which was held on November 28, 2005, before Administrative Law Judge ("ALJ") Mark C. Ramsey. In an April 14, 2006, decision, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 1990.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 et seq.).

3. The objective medical evidence fails to establish the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms (20 CFR 404.1520(c)).

4. The claimant has not been under a "disability," as defined in the Social Security Act, from January 1, 1985 though the date of this decision (20 CFR 404.131; 404.1520(c)).

After the Appeals Council declined review on November 8, 2007, this appeal followed.

## II. SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following medical records:

1. Medical Records covering the period from March 19, 1996 to February 22, 1996 from Mercy Medical Center (CAR 139-188);

2. Medical Records covering the period from August 1, 1996 to June 3, 1999 from Redding Medical Center (CAR 189-282);

3. Medical Records dated March 27, 1997 from Kevin Lawson, M.D. (CAR 283-284);

4. Medical Records covering the period from November 25, 1997 to January 20, 2004 from VA Mathew, CA (CAR 285-543);

5. Medical Records covering the period from March 3, 1998 to July 22, 2003 from W. Howell, O.D. (CAR 544-625);

6. Medical Records covering the period from October 9, 2002 to January 20, 2004 from VA Martinez POC (CAR 626-792);

7. Medical Records dated July 21, 1994 from L. Ross Clark, M.D. (CAR 793-797);

8.     Psychiatric Review Technique Form (DDS physician) dated September 10, 2004 (CAR 800-813);

9.     Medical Consultant's Review of physical Residual Functional Capacity Assessment dated September 23, 2004 (CAR 816-821);

10.     MRI Spine Cervical and Thoracic date October 19, 2004 (CAR 824-826);

11.     Listing 1.04 - Spinal Nerve Root Compression Form dated November 1, 2004 by Corsini C. Templado, M.D. (CAR 827-828);

12.     Letter dated June 23, 1999 by Corsini C. Templado, M.D. (CAR 829-831);

13.     Medical Records covering the period from May 8, 1967 to November 5, 1978 from Veterans Administration Healthcare System (CAR 832-919);

14.     Mental Impairment Questionnaire (RFC & Listings) dated September 23, 2004 (CAR 920-925); and

15.     Medical Report dated February 16, 2006 from Barth L. Wilsey, M.D. (CAR 926-930)

The medical records in the CAR consist of two sets of records. The first covers the time period from 1967 through 1978. The second covers 1996 through 2006. There is a gap in medical records from 1979 through 1995. Plaintiff only points to three relevant medical records. He cites his medical records from the VA from 1967 to 1978 (CAR 832-919), Dr. Clark's Mental Disorder Questionnaire Form (CAR 796-97) and progress notes from Dr. Sidwell at the VA dated August 13, 2002 (CAR 477-80).

Neither party summarized the medical records in the CAR. The following is the court's summary of the relevant medical evidence:

<u>1967-1968</u>

Plaintiff, who served in the United States Marine Corps during Viet Nam, received a gun shot wound to his left calf in January 1968, when he was 18 years old. The gun shot caused a fracture of the left fibula, which became infected, and required several surgeries. He was discharged from the hospital to duty on July 1, 1968, with limitations on long standing, running, marching, PRT, and duty in the field. He was ordered to return to the Orthopedic Clinic in four weeks. (CAR 903-04). It appears he then attended physical therapy.

## 1969

Several of the medical notes in the file are illegible. However, it appears that by January 1969, plaintiff's leg had not properly healed. (CAR 892-93). Plaintiff was diagnosed with (1) Ankylosis, fibrous, partial, left ankle, mild, secondary to trauma; (2) Cicatrix, skin, posterior, left calf, overlying Achilles tendon; and (3) Atrophy of muscle, mild, left calf, secondary to disuse; and was given a 30% disability rating by May 1969. (CAR 890).

## 1970

On September 10, 1970, plaintiff apparently had two x-rays. The first radiographic report states:

> Frontal and lateral views reveal deformity in the central portion of the fibula due apparently to a previous fracture. There is satisfactory union of the fragments and slight thickening as well as deformity, particularly well demonstrated in the lateral view at the site of the previous trauma. Otherwise no abnormality in the leg. (CAR 878).

The second report states:

> The psoas muscle shadows are smooth. There is mild scoliosis of the lumbar spine with deviation towards the left side in the lumbosacral junction. The bony structures are intact and normal in density. The intestinal pattern is normal. The shadows of the kidneys are of the usual shape and size. No calculus is demonstrated in the KUB[1] tract. (CAR 879).

## 1971

No relevant medical records are noted for this year.

## 1972

On May 20, 1972, plaintiff had an x-ray of his left shoulder, however the results of that x-ray are not included in the records.

/ / /

---

[1]     Referring to the kidney, ureter, and bladder.

1973-1975

No relevant medical records are noted for this time frame.

1976

On January 5, 1976, plaintiff had an examination for a disability evaluation. The relevant report indicates no records were available for the examining physician. Upon examination, the physician noted plaintiff "walks without any actually perceptible aberation [sic] of gait and does not use a foot brace, but there is some residual limitation of dorsiflexion." During this examination, plaintiff complained about "incomplete dorsiflexion which makes running and certain other activities awkward." Plaintiff also had soreness and stiffness at the gunshot wound site in cold weather. His knee motion, plantar flexion and subtalar motion were all normal. His left dorsiflexion was 20 degrees, right 10 degrees, and his right calf measured one-half inch larger in circumference than the left. (CAR 845). Plaintiff also had an x-ray of his lower left leg. This showed a "thickening deformity, mild, involving midlower shaft of fibula. Apparently this is the site of a previous fracture which is well healed and reunited. Otherwise no abnormality in tibia and fibula of left lower leg." (CAR 837).

On January 6, 1976, and January 21, 1976, plaintiff was seen with a complaint of arm numbness. It was noted that he had a shoulder dislocation in 1972. However, he had full range of motion in his left shoulder. (CAR 842-44).

1977

No medical records included in the record for this year.

1978

Plaintiff was apparently continuing his physical therapy. On October 19, 1978, it was noted that plaintiff was "progressing slowly in P.T. working on gait & transfers." (CAR 832). Plaintiff's major problem was hip pain, which was restricting his progress. It was also noted that he was awaiting a hip x-ray. In October and November of 1978, it appears plaintiff was continuing in some type of behavioral therapy, perhaps while hospitalized. (CAR 832).

1    <u>1979-1995</u>

2        As previously noted, there are no medical records included for this span of time.

3    <u>1996 Forward</u>

4        The medical records resume beginning in 1996. However, as the relevant time

5    period is prior to 1990, these records do not add substantially to the record. The court reviewed

6    the medical records to determine whether plaintiff could have perhaps been considered disabled

7    as of 1978 and again as of 1996. However, as discussed below, there is no finding supported by

8    objective medical evidence that plaintiff was disabled as of 1978. In addition, plaintiff does not

9    allege that he was disabled as of 1978. He states his disability began in 1985.

10        <u>Department of Veterans Affairs Disability</u>

11        Plaintiff was considered 30% disabled as of July 24, 1969, by the Department of

12    Veterans Affairs. This increased to 100% as of September 11, 1995. (CAR 55). His disability

13    consists of post traumatic stress disorder (100% from September 11, 1995); chronic low back

14    pain with degenerative disc disease of the thoracic spine associated with residuals of gunshot

15    wound left leg (60% from September 11, 1995); residuals of gunshot wound, left leg (30% from

16    July 24, 1969); degenerative changes of the cervical spine (30% from September 28, 2004);

17    tinnitus (10% from September 28, 2004); and bilateral hearing loss (0% from September 28,

18    2004). (CAR 55). Unfortunately, there are no medical records from the VA included in the

19    record relating to this determination of disability. As stated above, there is a complete lack of

20    medical records from 1979 to 1996. The determination that plaintiff was 100% disabled as of

21    1995 is not supported by objective medical findings, and there is no reference in the disability

22    determination to any specific medical records which support that determination.[2]

23    / / /

24

25        [2]    This is not to say that the undersigned thinks that determination was erroneous. It
     is simply worth noting that whatever medical records the VA used in making that determination
26    were not available to the ALJ.

<u>ALJ Findings</u>

The ALJ notes in his decision that no objective medical evidence was submitted covering the relevant period from January 1, 1985 (the alleged date of disability onset) through December 31, 1990 (the last day plaintiff was eligible for disability benefits). He also notes that "[t]here is little dispute that the claimant is presently disabled." (CAR 18).

## III. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. <u>See</u> <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986); <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. <u>See</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. <u>See</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, <u>see</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

# IV. DISCUSSION

In his motion for summary judgment, plaintiff argues that the ALJ erred in failing to find the presence of a medically determinable impairment. He argues that at the second step of the sequential evaluation, the ALJ must determine if the claimant suffers from a medically determinable impairment. However, at this step, the inquiry is intended to be a de minimis screening device to dispose of groundless claims, which he alleges his is not. He further argues that his examining physician reported, in 2002, that he received multiple treatments for lower back pain since 1970, and his back condition originated from his leg wound (citing CAR 477-80). In addition, in 2004, his treating psychiatrist indicated that plaintiff has been receiving psychiatric treatment since the mid-1980s, and that his current psychiatric condition is related to the injuries he sustained in Viet Nam. Therefore, plaintiff argues, the ALJ erred in failing to find a medically determinable impairment.

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. (20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).) If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. (20 C.F.R. §§ 404.1520(a) and 416.920(a).) The five-step process is summarized as follows:

1. Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2. If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

/ / /

/ / /

/ / /

3.  If the claimant has a severe impairment, determination of whether any such

severe impairment meets any of the impairments listed in the regulations;[3] if the claimant does

have such an impairment, the claimant is disabled and the analysis ends;[4]

4.  If the claimant's impairment is not listed, determination of whether the

impairment prevents the claimant from performing his or her past work;[5] if the impairment does

not, the claimant is not presumed disabled and the analysis ends; and

5.  If the impairment prevents the claimant from performing his or her past work,

determination of whether the claimant can engage in other types of substantial gainful work that

exist in the national economy;[6] if the claimant can, the claimant is not disabled and the analysis

ends.

To qualify for benefits, a claimant must establish that he or she is unable to

engage in substantial gainful activity due to a medically determinable physical or mental

impairment which has lasted or can be expected to last for a continuous period of not less than 12

months.  See 42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or

mental impairment of such severity that he or she is unable to do his or her previous work and

cannot, considering his or her age, education and work experience, engage in any other kind of

substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower,

882 F.2d 1453, 1456 (9th Cir. 1989).

---

[3]     See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[4]     If a claimant is found to have an impairment which meets or equals one of the
listed impairments, a conclusive presumption of disability applies and the claimant is entitled to
benefits.  See Marcia v. Sullivan, 900 F.2d 172, 174  (9th Cir. 1990) (citing Williams v. Bowen,
853 F.2d 643, 647 (9th Cir. 1987); Key  v. Heckler, 754 F.2d 1545, 1548 (9th Cir. 1985).

[5]     At this stage of the analysis, the ALJ should consider the demands of the
claimant's past work as compared with his or her present capacity.  See Villa v. Heckler, 797
F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[6]     At this stage of the analysis, the ALJ should consider the claimant's residual
functional capacity and vocational factors such as age, education and past work experience.  See
20 C.F.R. §§ 404.1520(f) and 416.920(f).

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).  The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation (steps 1 through 4 noted above).  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  Once the claimant establishes a prima facie case of disability, the burden of going forward with the evidence shifts to the Commissioner.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986);  see also Hammock v. Bowen, 867 F.2d 1209, 1212-13 (9th Cir. 1989).  The Commissioner has the burden to establish the existence of alternative jobs available to the claimant, given his or her age, education, and medical-vocational background (step 5 noted above).  In an appropriate case, the Secretary may meet this burden through application of the medical-vocational guidelines set forth in the regulations.[7]  See 20 C.F.R. Pt. 404, Subpt. P, App. 2; Heckler v. Campbell, 461 U.S. 458 (1983); Olde v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983).  If the guidelines do not accurately describe a claimant's limitations, the Commissioner may not rely on them alone to show availability of jobs for the claimant.  See Desrosiers v. Secretary, 846 F.2d 573, 577 (9th Cir.  1988).[8]

///

---

[7]    For any given combination of factors (residual functional capacity, age, education, and work experience), the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular limitations.

[8]    However, the mere allegation of the presence of a non-exertional impairment is not sufficient to preclude application of guidelines.  Such non-exertional impairment must be found to significantly limit the range of work permitted by a claimant's exertional limitations before the Commissioner will be required to obtain expert vocational testimony regarding the availability of other work.  See, e.g., Polny v. Bowen,  864 F.2d 661, 663 (9th Cir. 1988); Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).  Pain has been recognized as a non-exertional limitation which can significantly limit ability to perform basic work skills.  See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985).

"The claimant carries the initial burden of proving a disability." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "Failure to prove disability justifies a denial of benefits." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005 (citing Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)).

> [A] medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, . . . [and] under no circumstances may the existence of an impairment be established on the basis of symptoms alone. . . . [T]he existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

Id. at 1005 (quoting SSR 96-4p, 1996 WL 374187 (July 2, 1996)) (acknowledging that while SSRs do not have the force of law, they represent the Commissioner's interpretation of the agency's regulations and the courts are to give them some deference).

Here the ALJ found plaintiff failed to support his claim of disability with any relevant medical records. As discussed above, the medical records plaintiff provided did not cover the relevant period of time, between the time plaintiff alleges he became disabled and the date his insured status expired. Plaintiff therefore failed to meet his initial burden of proving a disability. As mentioned above, the court reviewed the medical records plaintiff provided for the time period prior to 1978 to determine if perhaps plaintiff showed he was disabled prior to 1978. If he had, and there is no question he was disabled after 1995, perhaps it could be presumed that he must have therefore been disabled prior to 1990. However, there is nothing in the medical records plaintiff provided which could have been used by the ALJ as a basis for finding plaintiff had been disabled prior to 1978. It is clear to the court, and it does not appear that anyone doubts, plaintiff has had continuing difficulty with his leg following his combat injury. He attended physical therapy, was diagnosed with fibrous ankylosis (reduced joint mobility), and was assessed with a 30% disability. However, by 1976, during a physical examination, the examining physician noted plaintiff had a normal gait, but had difficulty running, and had some

muscle atrophy. In 1978 plaintiff was suffering from some hip pain, but was continuing in physical therapy. This is where the medical records end. There is some indication that in the late 1970s plaintiff was continuing to have some physical difficulties, but there is nothing in the record to indicate he had a disabling condition. In fact, it appears from the record that he was continuing to work on his difficulties. It is also relevant that plaintiff does not claim his disability began until 1985. Therefore, the undersigned cannot find the ALJ erred in determining that there was no objective medical evidence that plaintiff had a medically determinable impairment. There is simply a lack of evidence.

As defendant argues, plaintiff's reliance on his doctors' statements, which were based on his subjective reporting not objective corroboration, are insufficient to meet his burden of proving a medical impairment. Plaintiff relies on Dr. Sidwell's 2002 examination notes as proof of his medical impairments. (CAR 477-79). Dr. Sidwell diagnosed plaintiff with

> 1.      Status post gunshot wound to the left lower extremity with complications and postoperative infection of the Achilles tendon area.
> 2.      Chronic low back pain with degenerative disc disease, most severe at L5-S1.

(CAR 479).

Dr. Sidwell's report noted a medical history from plaintiff which included a low back condition secondary to plaintiff's gunshot wound of his left leg. In addition, Dr. Sidwell notes that plaintiff stated that while his leg was the focus of his medical treatment early on, no attention was given to his back which was injured during the same combat incident. She also states that

> [o]ver the years [plaintiff] has had multiple treatments since 1970 for his chronic low back pain. He has seen spine experts and has been told that he has had an old fracture of possibly L4 or L5. . . . [Plaintiff] is bothered with chronic low back pain 24 hours a day, seven days a week. His pain has been much worse over the past few years.

(CAR 478).

Dr. Sidwell's diagnosis was apparently based on a review of plaintiff's C-file as well as the oral history from plaintiff and her physical examination. Unfortunately, this "C-file" Dr. Sidwell reviewed for a determination that plaintiff's "onset of chronic low back pain began during [his] military service due to the injury he sustained" was not made part of the record in these proceedings. While perhaps relevant, Dr. Sidwell's finding that plaintiff suffers from an old spinal fracture does not support plaintiff's claim of disability prior to 1990. This is especially true where plaintiff reported that his back pain was worse over the few years proceeding 2002. That is insufficient to support a claim of disability as of 1990, twelve years prior.

To the extent plaintiff refers to the psychological evaluation by Dr. Clark in 2004, this evaluation similarly does not support his claim that the ALJ erred in finding plaintiff did not meet his burden of establishing a medically supportable impairment. Dr. Clark began treating plaintiff in 1997. Although he refers to treatment plaintiff received "10-12 years ago" and treatment for PTSD in the 1980s, there is no objective medical evidence in the record to support this finding. There are no treatment records from the 1980s, nor does Dr. Clark indicate whether he had a copy of these treatment records as support for an objective finding. Again, a finding in 2004 that he is unable to "reliably attend work or interact with supervisors or co-workers" is insufficient for the ALJ to find plaintiff disabled as of 1990. (CAR 793-97).

To the extent the ALJ had the duty to develop the record further, the ALJ met this burden by keeping the record open for 20 days beyond the hearing for plaintiff to submit additional medical records. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (acknowledging the ALJ may discharge his duty to develop the record "by keeping the record open after the hearing to allow supplementation of the record").

The question before the ALJ was not whether plaintiff is currently disabled, nor was it whether plaintiff's disability is sufficiently severe. The question was did plaintiff meet his initial burden of establishing a prima facie case of disability by showing that he has a physical impairment. In order to make such a prima facie showing, plaintiff had the duty to submit

objectively verifiable medical impairments to support his claim of disability as of 1990. Unfortunately, plaintiff failed to meet that burden. The ALJ found plaintiff failed to show any impairment because he did not provide medical records for the time period in which he is claiming his disability began. While plaintiff has submitted medical evidence to perhaps show he was disabled as of 1995, his insured status unfortunately expired in 1990. The ALJ's finding that the objective medical evidence failed to establish the existence of a medically determinable impairment is supported by the record.

## V. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

  1. Plaintiff's motion for summary judgment (Doc. 15) is denied;

  2. Defendant's cross-motion for summary judgment (Doc. 16) is granted; and

  3. The Clerk of the Court is directed to enter judgment and close this file.


DATED: March 9, 2009

        _____
        **CRAIG M. KELLISON**
        UNITED STATES MAGISTRATE JUDGE